OPINION
{¶ 1} On August 17, 2001, Katmandu, Inc. ("Katmandu"), was given notice of a hearing before the Liquor Control Commission ("commission") to determine whether its permit(s) should be suspended or revoked or forfeiture ordered for the following alleged violations:
 {¶ 2} "Violation #1: On or about December 4, 2000, you (and/or) your agent and/or employee(s) ROBERT BRESCIA and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to-wit, electronic video gambling device, in violation of4301:1-1-53, Ohio Administrative Code.
 {¶ 3} "Violation #2: On or about December 4, 2000, you (and/or) your agent and/or employee(s) ROBERT BRESCIA and/or your unidentified agent and/or employee did permit and/or allow in and upon the permit premises, gaming or wagering on a game and/or scheme of skill and/or chance, to-wit, pay-off records, in violation of 4301:1-1-53, Ohio Administrative Code."
 {¶ 4} A hearing was held before the commission on September 13, 2001. Katmandu entered a plea of denial as to Violation #1, with a stipulation as to the investigative report. Upon the attorney general's motion, Violation #2 was dismissed. No other evidence was presented.
 {¶ 5} On September 25, 2001, the commission issued an order finding Katmandu in violation of Violation #1. The commission gave Katmandu the option of paying a forfeiture of $10,000 or serving a 100-day suspension. Katmandu appealed the commission's order to the Franklin County Court of Common Pleas, and the commission's order was stayed.
 {¶ 6} The parties filed briefs. On April 2, 2002, the common pleas court rendered a decision determining that the commission's order was supported by reliable, probative and substantial evidence and was in accordance with law.
 {¶ 7} Katmandu (hereinafter "appellant") has appealed to this court, assigning the following as error:
 {¶ 8} "THE FRANKLIN COUNTY COMMON PLEAS COURT ERRED WHEN IT AFFIRMED THE ORDER OF THE LIQUOR CONTROL COMMISSION AND FOUND THAT THE ORDER OF THE LIQUOR CONTROL COMMISSION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE PURSUANT TO THE FINDINGS OF THE OHIO SUPREME COURT IN VFW POST 8586 V. LIQUOR CONTROL COMMISSION (1988), 83 OHIO St.3d 79 [sic]."
 {¶ 9} In reviewing the commission's order in an R.C. 119.12
appeal, a court of common pleas is required to affirm if the order is supported by reliable, probative and substantial evidence and is in accordance with law. VFW Post 8586 v. Ohio Liquor Control Comm. (1998),83 Ohio St.3d 79, 81. The determination of whether an agency order is supported by reliable, probative and substantial evidence involves essentially a question of the absence or presence of the requisite quantum of evidence. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 111.
 {¶ 10} While it is incumbent on the common pleas court to examine the evidence, this is not the function of the court of appeals. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. This court determines only if the common pleas court abused its discretion, which encompasses not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. Id. Absent such an abuse of discretion, this court may not substitute its judgment for that of the agency or common pleas court. Id. As to questions of law, this court's review is de novo. See Ohio Historical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St.3d 466, 471.
 {¶ 11} Appellant was found in violation Ohio Adm. Code 4301:1-1-53
("Regulation 53"), which states, in pertinent part:
 {¶ 12} "(B) No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01 of the Revised Code."
 {¶ 13} In order to find a violation of Regulation 53, the commission must receive evidence tending to prove the same elements that are required to sustain a criminal conviction on one of the gambling offenses listed in R.C. 2915.01(G). VFW Post 8586 at paragraph two of the syllabus. Such violation must be shown by a preponderance of the evidence. Id. at 81.
 {¶ 14} R.C. 2915.01(F)(3) and (4) define "gambling device," respectively, as an apparatus designed for use in connection with a game of chance or any equipment, device, apparatus, or paraphernalia specially designed for gambling purposes. R.C. 2915.01(G) states that a gambling offense includes a violation of R.C. 2915.02. R.C. 2915.02 addresses gambling and states, in pertinent part:
 {¶ 15} "(A) No person shall do any of the following:
 {¶ 16} "* * *
 {¶ 17} "(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]"
 {¶ 18} Appellant asserts that the Ohio Department of Public Safety ("department") failed to prove all the elements of a gambling offense as required by Regulation 53 and VFW Post 8586. Appellant contends there was no evidence of a gambling device and no evidence of a gambling offense, specifically, that there was no evidence of profit as required by R.C.2915.02(A)(2). For the reasons that follow, we find that the common pleas court did not err in affirming the commission's order.
 {¶ 19} As indicated above, appellant stipulated to the investigative report of the department's liquor control agent. Such report indicated that on December 1, 2000, Akron police officers entered the permit premises and "observed a machine that allows persons to play schemes of chance on a video screen (Electronic Video Gambling Device)." The machine allowed the player a chance to win up to $500 and gave out a ticket after the game was finished. One officer placed a $10 bill in the machine and received ten phone card tickets. Three of these were winning tickets. Two tickets awarded $1 each and one ticket awarded $10. The officer took a $1 winning ticket and the $10 winning ticket to the bar and was paid $11 in cash.
 {¶ 20} The stipulated report and the attachments thereto show that the device seized from the permit premises, a "Lucky Shamrock" machine, allowed persons to play schemes of chance upon it. The fact that a two-minute phone card was given as part of playing the game does not negate the fact that this was a gambling device. Again, the stipulated report stated that the machine was a gambling device. Appellant provided no evidence to the contrary. We can find no error in the common pleas court's determination that the phone card portion of the ticket was of slight value and that the predominate purpose of operating the machine was to play a scheme or game of chance. Accordingly, the evidence supported a finding that the machine at issue was a gambling device as defined in R.C. 2915.01(F).
 {¶ 21} Appellant next asserts that there was no evidence of profit. The investigative report further stated that on December 4, 2000, a search warrant was executed, and two Akron police officers along with a liquor control agent entered the premises with the owner, Robert Brescia. Mr. Brescia told the officers and agent that "George Music" owned the gambling machine and that Phil George told Mr. Brescia the machines were legal. Mr. Brescia provided $750 in start-up money which was used to pay off the winning tickets. Mr. Brescia further stated that either a service man or Mr. George collected the money from the machine. Mr. Brescia stated that the machine makes $2,250 in profit, that he got $750 and that $1,500 went to Mr. George. Mr. Brescia stated that "he assumed that he was going to receive a 1099 at the end of the year from Phil George, from the money that was his, from the machine." No records were kept pertaining to the gambling machine. One hundred sixty-six dollars was taken from the machine along with $40 in cash that was used as pay-out money.
 {¶ 22} Clearly, the machine at issue was a scheme or game of chance that was conducted for profit, as set forth in R.C. 2915.02(A)(2). The uncontroverted evidence was that the machine made $2,250 in profit. Appellant focuses on Mr. Brescia's statement in the investigative report that he merely "put up" $750 to pay off winning tickets and that he was reimbursed $750 from the game's profits. However, Mr. Brescia further stated that he assumed he would get a "1099" from the machine's owner for the money that was his from the machine. The commission could reasonably infer from this statement that Mr. Brescia, the owner of the permit premises, was not merely reimbursed his front money but that he actually made a profit himself from the operation of this machine.
 {¶ 23} More importantly, the fact that the machine itself (a game of chance) made a profit and that appellant operated such machine is sufficient to establish a violation of R.C. 2915.02(A)(2). R.C.2915.02(A)(2) does not require that the specific violator make a profit. Rather, the plain language of the statute indicates that a person is in violation when he or she operates or knowingly engages in conduct that facilitates a scheme or game of chance that is conducted for profit. Because the game here was conducted for profit, a violation of R.C.2915.02(A)(2) was shown.
 {¶ 24} In summary, the evidence before the commission was sufficient to show that a gambling offense, specifically, R.C.2915.02(A)(2), was committed and that a gambling device, as defined in R.C. 2915.01(F), was used for such gambling offense. Therefore, the common pleas court did not abuse its discretion or otherwise err as a matter of law in affirming the commission's order which found that appellant violated Regulation 53.
 {¶ 25} Accordingly, appellant's sole assignment of error is overruled.
 {¶ 26} Having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas affirming the Liquor Control Commission's order is affirmed.
Judgment affirmed.
LAZARUS and BROWN, JJ., concur.