DECISION
{¶ 1} Appellant, Backside, Inc., appeals from a judgment of the Franklin County Court of Common Pleas, affirming two orders of appellee, Ohio Liquor Control Commission ("the commission"). The commission's orders found appellant had committed two separate violations of Ohio Adm. Code 4301:1-1-52 ("Regulation 52"), and revoked appellant's D-5, D-6 liquor permit. For the reasons that follow, we affirm.
 {¶ 2} Both violations found to have occurred are based upon an agent and/or employee of appellant having facilitated or allowed the sale of marijuana on the permit premises, known as the Backside Lounge. The violations occurred during an investigation jointly conducted by agents of the Ohio Department of Public Safety and officers of the Warrensville Heights Police Department. The following facts are contained in the investigators' report, to which appellant stipulated at the commission's record hearing.
 {¶ 3} The first violation occurred on December 30, 2000. On that date, liquor agent Charles Clark entered the Backside Lounge at approximately 10:45 p.m. Agent Clark sat at the bar and engaged in a conversation with a bartender named "Kit." During the conversation, agent Clark inquired of Kit whether she knew of anyone in the bar who had any "smoke."[1] Kit told agent Clark to wait at the bar while she checked with a few patrons. Kit walked across the bar and spoke to a male patron who was later identified to agent Clark as "Ron." Moments later, Ron approached agent Clark and asked what he wanted. Agent Clark told Ron he needed some "Fire Smoke."[2] Ron told agent Clark to meet him in the men's restroom. Agent Clark complied, and during this restroom meeting Ron displayed a clear plastic bag containing what appeared to be a large amount of marijuana. After a brief negotiation as to price, agent Clark purchased five small plastic bags of marijuana for $50. Agent Clark returned to the bar, whereupon Kit asked him whether Ron had "hook[ed] him up."[3]
 {¶ 4} The Notice of Hearing with respect to the December 30, 2000, incident (in commission case No. 1472-01) states the violation as follows:
On or about December 30, 2000, you and/or your agent and/or employee(s) KIT LNU,[4] did knowingly and/or willfully allow in and upon or about the permit premises improper conduct, in that you and/or your agent and/or employee(s) KIT LNU, didconspire to sell a narcotic and/or hallucinogen, to wit,Marijuana, in violation of 4301:1-1-52, a regulation of theOhio Liquor Control Commission.
(Emphasis sic.)
 {¶ 5} The second violation occurred on January 12, 2001. On that date, agent Clark entered the permit premises at approximately 11 p.m. He approached the bar area and eventually made contact with a woman later identified as Pamela Tucker ("Tucker"). Agent Clark asked Tucker if she would hold his beer for him while he went into the men's restroom to buy some "weed."[5] Tucker took agent Clark's beer and set it on a shelf behind the bar. In the men's restroom, agent Clark purchased four bags of marijuana from "Ron" for $40. Upon his return to the bar area, agent Clark asked Tucker for his beer. She returned agent Clark's beer to him, whereupon she inquired whether he got his "hook up."[6]
 {¶ 6} The Notice of Hearing pertaining to the January 12, 2001, incident (in commission case No. 1473-01) stated the alleged violation as follows:
On or about January 12, 2001, you and/or your agent and/or employee(s) PAMELA TUCKER and/or BLAISE BRUCATO, did knowingly and/or willfully allow in and upon or about the permit premises improper conduct, in that you and/or your agent and/or employee(s) PAMELA TUCKER and/or BLAISE BRUCATO,[7]did conspire to sell a narcotic and/or hallucinogen, to wit,Marijuana, in violation of 4301:1-1-52, a regulation of theOhio Liquor Control Commission.
(Emphasis sic.)
 {¶ 7} On March 5, 2002, the commission held a hearing on both violations. As noted earlier, appellant stipulated to the investigators' report, and entered a denial as to both violations. In addition to the report, the notices of hearing were entered into evidence. On March 19, 2002, by two separate orders, the commission found appellant to have violated Regulation 52 with respect to both the December 30, 2000, incident and the January 12, 2001, incident. Both orders imposed revocation of appellant's liquor permit, effective April 9, 2002.
 {¶ 8} Appellant appealed to the Franklin County Court of Common Pleas, pursuant to R.C. 119.12. In its brief filed in that court, appellant urged that both the language of the charges (contained in the two notices of hearing) and the facts adduced in the record are insufficient to prove a criminal conspiracy and thus, do not constitute substantial evidence supporting the commission's orders. Appellant also argued that the notices of hearing of record contained "inadequately drawn" charges, because each charged the permit holder with "conspiracy" but included the name of only one person as having been involved therein, and such person was not an owner or manager.[8]
 {¶ 9} On February 26, 2003, the trial court journalized its decision affirming the orders of the commission. Therein, the trial court rejected appellant's arguments, noting that, "[t]he permit holder and the bartenders are not being criminally charged with conspiracy * * * or being tried before a court and jury for a felony." (February 26, 2003 Decision at 3.) The court observed that Regulation 52 does not refer to "conspiracy" or incorporate definitions from Title 29 of the Ohio Revised Code, which title concerns criminal offenses. Rather, the court stated, "[i]t is sufficient under [Regulation 52] that a permit holder's agent knowingly allowed or facilitated drug trafficking in the permit premises." Id. The court found that the stipulated evidence indisputably established that an employee and/or agent of appellant arranged a drug sale in the first incident, and openly tolerated a drug sale in the second incident. The court found this to be substantial evidence supporting the commission's orders, and thereby affirmed same.
 {¶ 10} In the present appeal from the judgment of the court of common pleas, appellant presents one assignment of error for our review, as follows:
The order of the Ohio Liquor Control Commission revoking appellant's liquor permits is not supported by reliable, probative, and substantial evidence and is not in accordance with law.
 {¶ 11} Under R.C. 119.12, when the trial court reviews an order of an administrative agency, the trial court must consider the entire record to determine whether the agency's order is supported by reliable, probative and substantial evidence and is in accordance with law. Univ. of Cincinnati v. Conrad (1980),63 Ohio St.2d 108, 110-111. See, also, Andrews v. Bd. of LiquorControl (1955), 164 Ohio St. 275, 280.
 {¶ 12} The trial court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence and the weight thereof.'"Lies v. Veterinary Med. Bd. (1981), 2 Ohio App.3d 204, 207, quoting Andrews at 280. In its review, the trial court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Univ. of Cincinnati, supra.
 {¶ 13} An appellate court's review of an administrative decision is more limited than that of a trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621, reh'g denied, 67 Ohio St.3d 1439. "* * * Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for [that of an administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment." Id. An abuse of discretion implies the decision is both without a reasonable basis and is clearly wrong.Angelkovski v. Buckeye Potato Chips Co. (1983),11 Ohio App.3d 159. On questions of law, the court of common pleas does not exercise its discretion and the court of appeals' review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v.State Emp. Relations Bd. (1992), 63 Ohio St.3d 339.
 {¶ 14} Appellant's argument in support of its sole assignment of error presents two questions of law for our consideration. The first question is whether the Division of Liquor Control ("the division") must prove knowledge of illegal or improper activity on the part of the owner or management of the permit premises, in order to prove a violation of Regulation 52. Appellant argues that, in this case, the division was required to prove the elements of a criminal conspiracy, and that an owner or manager was involved in such conspiracy; appellant further asserts that because no such proof exists in the present case, the commission's orders are unsupported.
 {¶ 15} Ohio Adm. Code 4301:1-1-52, entitled "Entertainment — prohibition against improper conduct," provides, in pertinent part:
(B) Prohibited activities: no permit holder, his agent, oremployee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:
* * *
(4) Allow in, upon or about the licensed permit premises, orengage in or facilitate in, the possession, use, manufacture, transfer, or sale of any dangerous drug, controlled substance, narcotic, harmful intoxicant, counterfeit controlled substance, drug, drug paraphernalia, or drug abuse instrument as said terms are defined in ORC Chapter 2925.
(Emphasis added.)
 {¶ 16} This court has previously held that the plain language of Regulation 52 permits a finding of a violation where only an employee or an agent of the permit holder knowingly allows certain prohibited activities to take place in or about the permit premises, even when no owner or manager is aware of the existence of the prohibited activities. Goldfinger Enterprises,Inc. v. Ohio Liquor Control Comm., Franklin App. No. 01AP-1172, 2002-Ohio-2770 at ¶ 11. Therefore, we find no merit in appellant's argument that the division was required to prove that an owner or manager of the Backside Lounge had knowledge of the illegal drug transactions that occurred on the premises.
 {¶ 17} The second question presented by appellant's argument is whether, when a permit holder is charged with violating Regulation 52, and the hearing notice alleges that the "improper conduct" forming the basis of the charge was a "conspiracy," proof of the elements of a conspiracy as defined in R.C.2923.01(A)(1) is required before the permit holder can be lawfully found to have violated the regulation. Subsumed under this question is the issue of whether the hearing notices of record properly afforded appellant notice of the allegations against it, pursuant to R.C. 119.07,[9] when the notices named only one person as having been involved in the "conspiracy" forming the basis for the charge, and did not include the name of an owner or manager.
 {¶ 18} Appellant's argument essentially asks this court to graft upon Regulation 52 language borrowed from the Ohio Criminal Code. In its brief, appellant directs our attention to R.C.2923.01(A)(1), which defines the crime of conspiracy. Appellant focuses on the portion of that definition requiring that the one charged with conspiracy must have engaged therein "with another person or persons," and argues that, if the division charges "conspiracy," it must include in the charge at least two names, including the name of an owner or manager, and it must prove the elements of conspiracy as would be required in a criminal judicial proceeding.[10]
 {¶ 19} First, as we stated above, Regulation 52 requires no proof that an owner or manager knew or should have known of the improper conduct. Second, Regulation 52 contains no reference to the criminal code. If the commission had chosen to include within the language of Regulation 52 references to the criminal code, it could have done so, as it chose to do when promulgating, for example, Ohio Adm. Code 4301:1-1-53, relating to gambling on permit premises.
 {¶ 20} From the plain language of Regulation 52, we find no intent therein to require proof of the elements of any crime defined by the Ohio Revised Code. Moreover, pleadings interposed in an administrative proceeding do not require the linguistic exactitude of those filed in a judicial proceeding. Ohio MotorVehicle Dealers' Salesmen's Licensing Bd. v. Memphis AutoSales (1957), 103 Ohio App. 347, 358. Thus, we hold that, in a proceeding wherein a liquor permit holder is charged with a violation of Regulation 52, there is no requirement that the evidence or the language of the hearing notice include the elements of any crime defined in the Ohio Revised Code. The purpose of R.C. 119.07 is to give sufficient notice such that the defending party can adequately prepare a defense. Prinz v. OhioCounselor Social Worker Bd. (Jan. 21, 2000), Hamilton App. No. C-990200. From our review of the record, we do not find that appellant was prejudiced in any way by the division's arguably inartful use of the word "conspiracy" in the two hearing notices of record. See Beckman v. Ohio Dept. of Commerc, Div. of RealEstate (Dec. 29, 1992), Franklin App. No. 92AP-1254. It is clear that appellant was well aware of the factual allegations underlying the two Regulation 52 charges against it, and was able to fully mount a defense to same.
 {¶ 21} Applying the plain language of Regulation 52 to the facts adduced in the record, it is clear that on December 30, 2000, "Kit" knowingly and willfully allowed, engaged in and facilitated the transfer and sale of a drug on the permit premises. On January 12, 2001, Pamela Tucker knowingly and willfully allowed the transfer and sale of a drug on the permit premises. "Kit" and Tucker were both employees and/or agents of the permit holder. These facts were stipulated and thus conclusively established. A.B. Jac, Inc. v. Liquor ControlComm. (1972), 29 Ohio St.2d 139, 141. Given that the facts established violations of the plain language of Ohio Adm. Code4301:1-1-52(B)(4), the court of common pleas did not abuse its discretion in finding that the commission's orders were supported by reliable, probative and substantial evidence.
 {¶ 22} Accordingly, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bowman and Brown, JJ., concur.
[1] "Smoke" is a street term meaning marijuana.
[2] "Fire Smoke" is a street term referring to a strong hallucinogenic form of marijuana.
[3] This is a street term used in connection with sales of illicit drugs.
[4] "LNU" refers to "last name unknown."
[5] "Weed" is a street term meaning marijuana.
[6] In street parlance, Tucker was inquiring whether agent Clark had secured his marijuana buy.
[7] Blaise Brucato is the manager of the Backside Lounge. At the commencement of the record hearing, the Division of Liquor Control voluntarily deleted his name from the language of the hearing notice. There is no evidence in the record that Mr. Brucato was in any way involved in the drug sales subject of this proceeding.
[8] The record reflects that this is the only defect that appellant alleged existed in either notice of hearing, pursuant to R.C. 119.07; therefore, we consider only this alleged defect and disregard any others that might be present.
[9] R.C. 119.07 requires that the notice of hearing include, inter alia, "the charges or other reasons for the proposed action" and "the law or rule directly involved."
[10] Appellant does not argue that proof beyond a reasonable doubt is required.